Good morning Judge Scudder, Judge Pryor, Judge Saini, I am here on behalf of Ricky Green to argue that there was insufficient evidence at Mr. Green's trial to allow the case to go to the jury and that the district court erred again when he denied Mr. Green's post-trial motions seeking acquittal. Ms. Gambino, you're not contesting your client's identity in the video footage from the target, are you? No, I'm not. In Mr. Ricky Green's case, which is a felon in possession case, which oddly is not being challenged for the current reasons, Mr. Green, the government failed to prove that there was any knowing possession of the firearm that was found when Mr. Green was arrested. There are several evidentiary gaps which prevent the jury from reasonably concluding that Mr. Green did in fact have knowledge of the firearm. First of all, the government relies heavily on the timing in the case to suggest that no one but Mr. Green could have had possession of the bag in which the firearm was found. This is contrary to the evidence. As you see on the Government's Exhibit 14 videos, the defendants, there were three cars of individuals who were at the Target store that evening. Mr. Green was in one car, which included three other individuals. They were not only in the cars at the scene of the Target, but there is a video showing them getting back into the cars, leaving for a time period where we don't see them, which according to the evidence at trial is approximately two or three minutes, and coming back to the Target before they see the police officers and flee. There was plenty of time and plenty of individuals who would have had contact with Mr. Green if you presume in the first instance that the bag shown on the video is the same bag that was found at the scene down the road. That also is a gap, because the video itself, if you take a look at it, it does show that the bag that is in Mr. Green's possession is red, but it's not a very clear… Well, it shows two zippers. This bag had two zippers. Yes. That argument is probably not your strongest. Well, it certainly does show the two zippers, but the two zippers are important because the government also relies on no time to change the contents of the bag, but you can see in the original video that Mr. Green opens one of the zippers and takes a white object out of the bag and puts it back in, and when the bag that's found at the scene is found, there's nothing in it except for a firearm. So clearly there was some time at some point… Well, they're not jury arguments, Judge, because they reveal gaps in the chain of inferences that a jury would have to go to. A jury is not permitted to speculate, and it's our contention that what happened in this case… There's a red bag that your client had that had two zippers that is shown on video footage that is found shortly afterward after they take off when the police come. The police follow them. One of the officers testifies he sees your client in the gangway jumping over a fence, and the bag is found with the firearm right around there. It sounds to me like you're making jury arguments that they've rejected. No, Judge. In fact, that points out another gap in the evidence that was actually contrary to the evidence presented, and it was not a reasonable inference that Mr. Green had the bag tossed at or placed at where it was found, because Officer Mendoza testified that he saw a figure, presumably Mr. Green, running through the backyards, at the back part of the backyards, and he was eventually found under the stair steps in one of the yards where the gangway between 1436 and 1438 is. If the officer saw that, then it's clear that when he saw the figure, the figure had no bag. The figure didn't toss a bag. The figure didn't hide a bag, and the figure was found by Officer Mendoza almost immediately after as he walked down through that very same gangway. And you could see that on Officer Mendoza's body camera. However, the gun and the bag were found at the front of that gangway, hidden behind a dust broom. Officer Nelson testifies that it was by a downspout at the front of the gangway where nobody sees Mr. Green, and there are at least two other people running around in the area according to the 911 calls and according to the number of people that got out of the car and took off running when... So is it...we know from the testimony that the officer saw your client in the gangway and that the bag was found at the front of the gangway. Is it your argument that because nobody saw him actually place the bag there that it's insufficient? It is insufficient because... But is that your argument that because nobody saw him place the bag there that it can't be beyond a reasonable doubt? It is part of my argument, but not the entirety of my argument. That is pointing out another evidentiary gap because you can't simply speculate that he put the bag there when the officers actually see him in the area without a bag and find him without a bag. So it's not a fair inference or a reasonable inference to say that he put the bag there when there would have been no time. But you're not talking about a lot of time that's going by at all. It's a very short amount of time. So a jury could look at the photo and say they found the same bag in between 1436 and 1438 and presumably conclude that there was enough time go by after the 911 call from 1434 for him to go drop the bag and then go hide. What is it about that evidence that would preclude a jury as a matter of law from so finding through inference, through the circumstances? Because the testimony of Officer Mendoza is contrary to those circumstances and because there wasn't sufficient time or any evidence that Mr. Green did that for one thing or was even able to do that based on the timing of when Mr. Mendoza sees him. And that area was full of officers. Nobody saw anyone running on Wellington, which is where they would have had to have been, toward the front of the sidewalk in order to place that bag there. Also, the time between when Officer Mendoza sees Mr. Green and arrests him is seconds. So if Mr. Green had been the one to hide it, Mr. Mendoza would have seen it based on where he was. Do you want to reserve the remainder of your time? I do. Okay, very well. Thank you, Your Honor. You're welcome. Mr. Rubenstein, good morning. Good morning, Your Honor. May it please the Court, Corey Rubenstein for the United States. Taken in the light most favorable to the government, the evidence here was sufficient for a rational jury to conclude that the defendant knowingly possessed the gun that was recovered from the Nike Air Jordan bag in that gangway on Wellington. The district court, therefore, was correct in denying the Rule 29 motion. The target video showed the defendant for three full minutes with that bag in the target alley. It showed the defendant not just possessing the bag but wearing it. He had it strapped around his body the entire time he was in that alley. It showed at one point the defendant looking in both pockets of that bag and that the bag appeared to be weighed down by a heavy object. Counsel, if we move to the gangway itself. Yes. Let's articulate what evidence did the jury hear that moved it from speculation to a reasonable inference that Mr. Green was the one who placed that red bag under the dustbin? Yes, Your Honor. First of all, I'd like to correct the way that Officer Mendoza's testimony was characterized. All right. Officer Mendoza didn't see the defendant running through the backyards. Officer Mendoza testified that he and the other officers after, by the way, after the defendant was seen on Lincoln Avenue when he jumped out of the car to flee on foot, was seen by Officer Pajowski with the bag. Then the officers began canvassing Wellington, that block on Wellington. Officer Mendoza and two other officers were moving west on the block. Officer Mendoza heard somebody climbing the fence, turned to look down the gangway and saw the defendant at that point on that fence and ran down immediately and confronted the defendant across the fence. Officer Mendoza didn't have a body-worn camera. He was one of the officers who didn't. But there was another officer from the alleyway of the gangway who had a body-worn, which showed Mendoza in that gangway confronting the defendant exactly where he testified that he saw. Now, it's true that Mendoza didn't see him putting the bag down there, and the reasonable inference from the jury was the defendant had just done it. Before he arrived, he had put the bag there. He was trapped in that gangway. The testimony and the evidence was by this point there were officers everywhere. There were officers on the street, on Wellington. There were officers in the alley, and he was being surrounded. So he's trapped in that gangway. A reasonable jury could infer that since the defendant was the only one, the only evidence of anybody possessing that bag was the defendant from the three minutes in the Target to Lincoln, and now when he's arrested, he's adjacent to the gangway where the identical bag is hidden behind a dustpan. Mr. Rubenstein, help me out on this. The theory was not that he dropped the bag while running, right? In other words, he did not drop the bag on his running path. Correct. Okay. So there had to have been a moment in time where he went down that gangway. It's not a long distance. I know that. When is that likely to have happened, or what could the jury have found? The most reasonable inference was it was right before Mendoza and the other officers made their way to that part of the block. So is it in between after he leaves the backyard or something in 1434? Because there's a 911 call, right, from the homeowner? There is. There's a 911 call from 1434, which is shortly before the arrest. Do we know the exact content of that call? We do, and I can read it to you, Judge, because it's ambiguous about whether the caller is reporting what she's actually seeing at that moment versus what she saw. What she had seen. Correct, Judge. So the caller says, somebody's broken into our backyard. They've broken in behind the house in the alley. I've seen a man coming in our backyard. But even if you assume that she's narrating what she's looking at right then as opposed to she saw somebody and she goes and finds her phone and calls the police, even if you assume that, the jury was reasonable in determining that the short distance, and if you assume that was the defendant, by the way, because the caller didn't describe the person that she saw, the short distance from her backyard one yard over is 1434 is the caller. The defendant's arrested in 1436, and the gangway is just on the west side of 1436. So there's two fences and a yard. The jury would have been reasonable in concluding that there was sufficient time for the defendant to have moved that short distance, realized he's trapped, put the bag in the one place which provides some cover for it, and then he's spotted by Mendoza. Does the record tell us the length of the gangway? It does not tell us in feet. The closest we get are satellite maps or photos of the house. It's a single family house with a detached back garage. It's in the city. So I think juries using their common sense and considering the evidence in light of their everyday experience could determine it's not a very long distance from the front of the gangway. And by the way, it's not all the way to the back. It's like two-thirds of the way back where the defendant was seen and arrested on the other side. So given all that, the jury was not irrational in determining that the defendant had the bag, that the bag had the gun in it in the minutes preceding the defendant's arrest, and that the defendant knew that the gun was in the bag. And unless there are any further questions, we ask that the court affirm the defendant's conviction. Thank you. Thank you, Mr. Rubenstein. Yeah, Ms. Gambino, you have time left. There was no forensic evidence, no DNA, no fingerprints, and no testimony from any of the participants that indicated where that gun came from or who it belonged to. And it's simply inconsistent with the evidence to have a 911 call saying somebody's coming in through the alley, which is at the back, complete opposite end of where the gun was found. And if Officer Mendoza heard and then saw him jump over a fence, he also would have seen him place the bag there. There would have been simply not enough time for the defendant to have run from the back to the front and back again without the officers seeing him, because they were on the sidewalk and they were looking in that direction, as were officers coming down the alley. Is there any evidence, Ms. Gambino, to support your theory that the individual the 911 caller was calling about is your client? There is no evidence about who she was calling about. There were at least two other people in the area who also could have had the bag at that point, who also could have hid the bag at that point. Or who could have been in the backyard.  However, there's still simply not enough time between when Officer Mendoza testifies, he sees him going over the fence in the back, for him to not also have seen him place the gun at the front if that's what in fact happened. And in the absence of that, it's purely speculation. And that, in combination with the other evidentiary gaps, leads us to challenge the sufficiency of the evidence. And we ask that the court overturn the conviction. Okay, very well. Thank you. You're quite welcome. Thanks to you, Mr. Rudenstein, thanks to you and the government. We'll take the appeal under advisement.